# IN THE COURT OF APPEALS OF IOWA

---

No. 26-0319
Filed April 29, 2026

---

**In the Interest of E.J., Minor Child,**

**C.J., Father,**
Appellant.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Jordan Brackey, Judge.

---

**AFFIRMED**

---

Eric W. Manning of Manning Law Office, PLLC, Urbandale, attorney for
appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Teresa M. Pope of Pope Law, PLLC, Des Moines, attorney and guardian ad
litem for minor child.

---

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A father appeals the termination of his parental rights to one child, E.J., born in 2023, under Iowa Code section 232.116(1)(d) and (h) (2025). The father challenges the statutory grounds for termination, asserts a lack-of-reasonable-efforts claim, and then argues he should have been granted a six-month extension. He also contends an exception applies due to the parent-child bond. Upon our de novo review, we affirm the juvenile court's ruling.

## I. Background Facts and Proceedings.

Most recently, the family came to the attention of the Iowa Department of Health and Human Services (HHS) in May 2024, after allegations of child abuse involving the child's older sibling and allegations that the father was using methamphetamine in the home.[1] The older sibling had a bruise that resembled a handprint on his face and ear. An HHS worker began investigating the abuse, and other previous, unexplained injuries were found, including a fracture to the older sibling's tibia. The older sibling identified the father as the cause of his injuries. The father admitted to striking the older sibling, and it was determined he has a history of domestic violence. Based upon an investigation, the father was charged with child endangerment causing bodily injury, and a no-contact order was put in place between the father and older sibling. This incident resulted in a founded child abuse assessment against the father.

---

[1] The child has three older siblings. The juvenile court closed the child-in-need-of-assistance (CINA) cases involving the older siblings. This child's case remained open because the child has a different father than the siblings. When we say "father" in this opinion, we refer to E.J.'s father.

After that incident, as the mother was moving out of the residence she shared with the father, the father swung a crowbar at two other adults who were helping her move. A few days later, police were called related to claims of domestic violence and found the father was inside the home. He was arrested on warrants for assault with a dangerous weapon and child endangerment causing bodily injury. Several drugs in the residence were attributed to the father.

From May until November, the father did not maintain contact with HHS, and for some of that time he was the subject of an active arrest warrant. The father was in and out of jail until his arrest in November, and he has remained incarcerated since. Before his incarceration, he "did not participate in substance abuse services, mental health services, drug screens[,] or supervised visits." Also, he "was using methamphetamine up until the date of his arrest," and in August, he was found to have drug paraphernalia.

In September, the child was adjudicated a CINA, and the father failed to appear at the hearing. Throughout this case, the child continued to reside with the mother under HHS supervision. The mother has participated in recommended services and demonstrated the ability to care for the child and the older siblings. The child has remained out of the father's care since the start of this case.

In February 2025, the juvenile court ordered video visits between the father and the child. In March, they had three video calls. In April, the father was sentenced to a prison term not to exceed five years. His sentences run concurrently for: child endangerment causing bodily injury, two counts of assault with a dangerous weapon, driving while license barred, burglary in the third degree, theft in the second degree, and possession of a controlled

substance—methamphetamine. He has a parole review date scheduled this spring with no guarantees, so he may remain incarcerated until February 2027, his discharge date.

Visits stopped in April when the father was transferred from jail to prison. Family-Centered Services (FCS) unsuccessfully attempted to set up video calls at the new facility. By the time of the hearing in November, HHS had not been able to set up visits again, in part because the mother had to complete some of the application and the correctional facility required time to process the application. After the hearing, it was revealed that the child's application for visits through the correctional facility had been denied and, in any event, the father needed to complete treatments before visits would be allowed.

To his credit, while incarcerated the father engaged in Narcotics Anonymous treatment. His sobriety date is the date of his arrest in November 2024. He agreed there was no evidence showing that he would be able to comply with court expectations when he was not in custody. To that point, the father said he previously experienced a period of sobriety in the community, but he had not been sober for months before the abuse that led to the CINA case. When asked how his substance use harms the child, the father answered, "Just that I'm not there for [the child]." He had also been participating in some parenting classes while incarcerated but had not completed any.

In the October guardian-ad-litem (GAL) report to the court, the GAL noted that the father had not had contact with the child in six months and recommended termination of the father's rights. After the October permanency hearing, the State petitioned to terminate the father's parental rights.

At the November termination hearing, the father testified that prior to his incarceration, the mother had brought the child to visit him without the knowledge of HHS. The HHS termination report to the court noted that the father "has not adequately addressed the safety concerns that brought this case to the attention of the Department, and HHS has significant safety concerns related to his parenting." At the hearing, the HHS social worker testified that the father "was using methamphetamine up until the date of his arrest," and because the father had not yet successfully completed a treatment program, there were concerns about his ability to be sober in the community. HHS recommended the termination of the father's parental rights. The GAL echoed the HHS social worker's recommendation for termination because the father failed to "address[] the reasons that led to the court's involvement, including physical abuse of his child's sibling, unaddressed substance abuse issues, improper supervision concerns," failure to engage in services prior to incarceration, and any services the father engaged in while in custody have been limited.

In February 2026, the juvenile court terminated the father's parental rights. The father appeals.

## II. Standard of Review.

We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citation omitted). As always, our primary concern is the child's best interests. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Analysis.**

On appeal, the father argues that (1) the State did not prove either ground for termination while also asserting a minimal argument over reasonable efforts, (2) the juvenile court erred in not giving him a six-month extension, and (3) the termination would be detrimental to the child due to the parent-child bond. We address each argument in turn.

**A. Statutory Basis.** The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(d) and (h), and the father appeals both grounds. When the juvenile court cites multiple grounds for termination, we only need to find termination was proper on one ground to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We address the termination of the father's parental rights under Iowa Code section 232.116(1)(h), which provides:

> [The court may terminate parental rights if the] court finds that all of the following have occurred:
>
> (1) The child is three years of age or younger.
>
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

On appeal, the father only appears to challenge the fourth element by stating that "once he [is] out of custody," the child should be returned to his care. The father's sentence is set to run until February 2027 with no

guarantees of early release, and the father remained incarcerated at the time of the termination hearing. With that restriction, he argues the State failed to "meet [its] burden by clear and convincing evidence that the child could not safely be returned to the father's care with an extension." The father fails to argue that the child could be returned to his custody at the time of the termination hearing. Thus, we reject this argument. *See In re M.R.*, No. 25-1414, 2025 WL 3171421, at *2 (Iowa Ct. App. Nov. 13, 2025) (rejecting a parent's challenge to the ground that the child could not be returned home at the present time because an argument that the child could be returned "within the next six months does not support the [parent]'s challenge . . . as the relevant time . . . is the time of the termination trial").

We conclude the State proved the statutory ground for termination of the father's parental rights because the father was incarcerated at the time of the termination hearing and had not done the work with available prison programs to address the concerns about his parenting. *See In re W.M.*, 957 N.W.2d 305, 317 (Iowa 2021) (holding a parent's incarceration prevented children from being returned to the parent's custody at the present time). We also note that in this section of his petition on appeal, the father makes a veiled reasonable-efforts argument that HHS failed to address his requests for more visitation. We do not find this argument warrants consideration because during the course of these proceedings the father went missing and failed to stay in contact with HHS—all the while a warrant was outstanding for his arrest. Further, because of the problems coordinating visitation with the father's prison stay, it was he who created the impediment to his visitation.

Thus, the State proved a ground for termination by clear and convincing evidence.

**B. Six-Month Extension.** For the juvenile court to delay permanency "for an additional six months," it must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child . . . will no longer exist" after the six-month period. Iowa Code § 232.104(2)(b). Here, the father could not guarantee he would not be incarcerated in six months and thus available to parent. As noted, his term of incarceration extends until 2027. Furthermore, while he did complete some courses in prison to address his past mistakes, the father still had not adequately engaged in available services, such as mental-health or substance-use evaluations as ordered, nor has he demonstrated an ability to remain sober while in the community. And the HHS social worker testified the father had not made any significant progress on addressing his actions related to domestic violence and abuse. In all, the father failed to address these concerns by the time of the termination hearing, and the record does not reflect that circumstances will change in six months. We cannot conclude that the need for termination will no longer exist in six months.

**C. The Parent-Child Bond.** The State challenges error preservation as to the father's third argument, the permissive exception to termination due to the parent-child bond under section 232.116(3)(c). It is the father's burden to prove this permissive, not mandatory, exception. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception to termination . . . ."). Parents waive challenges under section 232.116(3) when they are not raised before the juvenile court. *See In re J.R.*, 20 N.W.3d 839, 843 (Iowa Ct. App. 2025). Here, the father did not raise this exception at the termination hearing, nor

did he offer support for this exception during the termination hearing. Thus, we find the father waived this issue.

To the extent the father did preserve this issue, we still decline to apply this exception. The August, September, and October 2025 FCS reports all noted that the child "does not have a relationship with" the father. The child has not been able to interact with the father since April 2025, and the child had been removed from the father's care for over a year at the time of the termination hearing. The father did not engage in visits offered before incarceration because he "was seeing her anyway" outside of visits approved by HHS. The father has not shown how the child would be disadvantaged by the termination of his rights, and the child has been doing well in her placement with her mother and older siblings. Thus, we decline to apply the permissive exception. *See In re A.B.*, 957 N.W.2d 280, 300–01 (Iowa 2021) (comparing the harm of termination against the child's need for permanency).

## IV. Conclusion.

The State proved by clear and convincing evidence a statutory ground for termination. The record does not show that the need for termination will no longer exist in six months, and the permissive exception is not applicable. Thus, we affirm.

**AFFIRMED.**

9